203 N.J. Super. 610 (1985)
497 A.2d 602
JULEANN SMITH, PLAINTIFF,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division Monmouth County.
Decided May 10, 1985.
*612 Ronald W. Sage, for plaintiff.
James J. Barry for defendant (Mauro & Barry, attorneys).
STAMELMAN, J.S.C.
This is a suit to recover extended personal injury protection (PIP) income benefits as authorized under the New Jersey Automobile Reparation Reform Act (No Fault Act) (N.J.S.A. 39:6A-1 et seq.). The issues to be resolved are the period of time the income benefits are to continue, the amount of the benefits and whether temporary disability benefits received by the plaintiff reduces the maximum income benefits payable to the insured. There is no reported case that discusses these issues.
Plaintiff, age 27, was involved in an automobile accident on December 4, 1981. She had been employed as a waitress for over eight years and was on maternity leave at the time of the accident. Her baby was born the day after the accident by caesarean section. She had a second child on February 1, 1983.
*613 As a result of the accident, plaintiff was admitted to a hospital. She sustained a fracture of the right patella, fracture of the right tibia and fibula at the ankle, and metatarsal fracture dislocation of the left foot. A closed reduction of the fracture of the right ankle was performed as well as an open reduction of the fracture of the right patella with wire fixation, and a closed reduction with wire fixation of the fracture of the left foot. She was discharged from the hospital on January 8, 1982. She has been under the care of her orthopedic surgeon since the date of the accident.
Plaintiff continues to have problems with her left foot and right knee. The foot swells and is painful. She is required to lie down during the day in order to relieve the pain. She is unable to kneel because of the pain in her right knee which requires elevation during the day to relieve the discomfort. She has developed arthritis in the left foot and right knee. She requires assistance from her parents, husband and sister to help care for her children and assist in her household work.
The doctors who testified for plaintiff and defendant are in agreement regarding plaintiff's medical problems. They agree that her present complaints are consistent with the injuries sustained in the accident. They concur that the injuries are permanent and that her condition will get worse. They also agree that plaintiff is unable to return to work as a waitress.
The first issue to be resolved is how long the income benefits should continue and what amount of weekly benefits plaintiff should receive. Defendant's physician testified that although plaintiff cannot return to work as a waitress, she was able to return to some type of employment. Plaintiff's doctor disagreed. In his opinion plaintiff is disabled and is unable to work because of the pain in her right knee and left foot. I find that because of her disability plaintiff is unable to return to work.
Plaintiff had paid an additional premium in order to have additional income-continuation benefits above the basic PIP *614 coverage. Her policy provided for income benefits up to $400 a week to a maximum of $41,600. The additional income coverage is authorized under N.J.S.A. 39:6A-10 which states:
Additional personal injury protection coverage.
Insurers shall make available to the named insured covered under section 4, ... suitable additional first party coverage for income continuation benefits.... Income continuation in excess of that provided for in section 4 must be provided as an option by insurers for disabilities, as long as the disability persists, up to an income level of $35,000.00 per year, provided that a. the excess between $5,200.00 and the amount of coverage contracted for shall be written on the basis of 75% of said difference, and b. regardless of the duration of the disability, the benefits payable shall not exceed the total maximum amount of income continuation benefits contracted for.
Plaintiff received income benefits from Allstate from the date of the accident to December 15, 1983, totaling $12,082. Payments were stopped on December 15, 1983 because Allstate was unable to resolve with plaintiff its claim for $1,666.50 overpayment. Allstate claimed that after the accident plaintiff had received 22 weeks of temporary disability benefits at $133 a week which should have been deducted from her weekly income benefits.
The amount of weekly income benefits plaintiff received was based on wages of $160 a week. Her employer certified to Allstate that her average wages during the four to five months prior to the accident was $160 a week. Plaintiff claims her weekly benefits should be higher. She alleges that her income before maternity leave was $300 to $400 a week which included minimum wage of $3.35 an hour and tips. Plaintiff had accepted without protest the income benefits paid by Allstate which were based on the employer's certification of $160 a week earnings for the period from the date of the accident to December, 1983. She was unable to present any record of her tips nor did she report the alleged higher income in her 1981 income tax return. I find that plaintiff failed to establish her claim for higher weekly income benefits.
N.J.S.A. 39:6A-10 provides that income continuation benefits will continue "as long as the disability persists." Because of *615 her disability, income benefits should have continued. Plaintiff is entitled to be paid income benefits from December 15, 1983 (the date payments stopped) to May 10, 1985, being 73 weeks at the rate of $120 a week (75% of $160). This amounts to $8,760 less the overpayment of $1,666.50 which would leave a net amount due plaintiff of $7,093.50 as of May 10, 1985. Allstate is required to pay income benefits during plaintiff's disability up to the maximum coverage set forth in the policy.
The next issue is whether the temporary disability benefits received by plaintiff reduces the maximum income continuation coverage of $41,600. It is necessary to determine the intent of N.J.S.A. 39:6A-4, -6 and -10. N.J.S.A. 39:6A-4(b) states:
[b] Income continuation benefits. The payment of the loss of income of an income producer as a result of bodily injury disability, subject to a maximum weekly payment of $100.00. Such sum shall be payable during the life of the injured person and shall be subject to an amount or limit of $5,200, on account of injury to any one person, in any one accident....
The statute provides for payment of loss of income, subject to maximum weekly payments of $100 up to $5,200. By way of illustration, a claimant who sustained wage loss of $50 a week will receive $50 a week. Assuming the disability continues for 104 weeks, the claimant will receive a total of $5,200 over a two year period.
Temporary disability payments are to be deducted from income continuation benefits in accordance with N.J.S.A. 39:6A-6 which states:
The benefits provided in section 4 and section 10, shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits, collectible under . .. employees' temporary disability benefit statutes .. . shall be deducted from the benefits collectible under section 4 and section 10.
The purpose of the statute is to preclude the insured from double recovery of income benefits. Tillman v. Allstate Insurance Company, 154 N.J. Super. 206 (Ch.Div. 1977). In that case plaintiff contended that there should be no deduction of temporary disability benefits from his income continuation payments because the PIP payment of $100 a week plus the $90 *616 a week disability payments did not cover his salary at the time of the accident. The court rejected this argument and held that the statute required the offset against PIP benefits. Plaintiff was entitled to receive the difference between the $100 a week and temporary disability benefits of $90 a week during the period he was unable to work.
Since plaintiff in our case had a continuing disability and was unable to work, she is entitled to receive $120 a week until the maximum of $41,600 has been paid. The receipt of temporary disability benefits did reduce the weekly income benefits, but since disability continued beyond the period of temporary disability benefits, plaintiff is entitled to receive income benefits "as long as the disability persists." N.J.S.A. 39:6A-10. These subsequent income benefits received after temporary disability benefits stopped did not constitute a double recovery. Deduction of temporary disability benefits as requested by Allstate from the maximum coverage would reduce the income benefits payable to plaintiff. The provisions of the act are to be liberally construed. N.J.S.A. 39:6A-16. PIP coverage should be given the broadest application consistent with the statutory language. Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90 (1981). The intent of N.J.S.A. 39:6A-6 is to deduct temporary disability benefits from weekly income benefits paid to the insured. The statute does not refer to a reduction of the maximum benefits resulting from temporary disability payments. N.J.S.A. 39:6A-4 provides that the basic benefits are not to exceed $100 a week and a total of $5,200 over the life of the insured. N.J.S.A. 39:6A-10 provides for additional benefits at the option of the insured. In our case plaintiff had paid an additional premium for an increase of maximum income benefits totaling $41,600. Plaintiff is entitled to receive the full $41,600 during her disability. This conclusion is consistent with the legislative intent to give a remedy to insured persons for lost wages resulting from the accident. The intent of the Legislature was to provide an equitable and uniform schedule *617 of benefits to all victims. Gambino v. Royal Globe Ins. Co., 86 N.J. 100, 106 (1981).
In summary, plaintiff is entitled to receive income benefits of $7,093.50 due as of May 10, 1985. Plaintiff is also entitled to $120 a week income benefits after May 10, 1985 until the maximum benefit of $41,600 has been reached. She is also entitled to receive interest at 12% on $7,093.50 from April 1, 1984 to May 10, 1985. N.J.S.A. 39:6A-10. April 1, 1984 is the date the income benefits would have continued after Allstate made an adjustment for the overpayment.